Novus Franchising, Inc.,                         Civil No. 10-2834 (JRT / SRN)


                    Plaintiff,                    **REPORT & RECOMMENDATION**


      v.


Mark A. Dean and
Joyce Dean,


                    Defendants.

---

     Cynthia Klaus and James Susag, Larkin, Hoffman, Daly & Lindgren, Ltd., 7900 Xerxes Avenue South, Suite 1500, Minneapolis, Minnesota 55431, for Plaintiff

     Mark A. Dean and Joyce Dean, Pro Se

---

     This matter comes before the undersigned United States Magistrate Judge on Plaintiff's Motion for Preliminary Injunction (Doc. No. 4), Plaintiff's Motion to Strike (Doc. No. 20) and Plaintiff's Motion to Strike Supplemental Response (Doc. No. 41). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). (See Am.Order of 8/18/10, Doc. No. 18.)

## I.    FACTUAL HISTORY

     Plaintiff Novus Franchising, Inc. ("Novus") is a business engaged in automotive glass repair franchising. (Complaint ¶ 12.) In February 2000, Defendants Mark A. Dean and Joyce Dean entered into a franchise agreement ("Franchise Agreement") with Novus to operate a Novus glass repair franchise within a geographic area that includes the four Texas counties of Calhoun, Dewitt, Jackson and Victoria. (Id. ¶ 18; Franchise Agreement, Ex. B to Decl. of Keith Beveridge.) The agreement was for a period of ten years, with an option to re-franchise the business for an additional ten-year term. Under the agreement, the Deans, as franchisees,

obtained the use of the Novus name and marks, marketing and advertising services, training programs and manuals and other materials that Novus considers highly confidential and proprietary.  (Id.)  In return, the Deans were to pay an agreed-upon percentage of gross revenue as a monthly royalty to Novus.  (See Franchise Agreement  ¶ 6.1)

Upon expiration of the agreement, if the Deans chose not to renew the franchise, they were obliged to undertake the following actions generally relating to the Novus name:  cease using the Novus name and mark and no longer hold themselves out as having any relationship with Novus; pay all fees and amounts due and owing to Novus; return all signs, leased equipment and printed and advertising materials to Novus; inform their suppliers in writing of the termination of the Novus Franchise Agreement; change the appearance of any business vehicles so as to be distinguishable from Novus's business vehicles; and cancel any assumed name or similar registration.  (Franchise Agreement ¶ 21, Ex. B to Beveridge Decl.)

The Franchise Agreement also contains a covenant not to compete for a two-year period after the expiration of the agreement.  (Id. at ¶ 22.3.)   The non-compete provision states that, for a two-year period following termination of the Franchise Agreement, the franchisee will not "own, operate lease, franchise, conduct [or] engage in . . . any or other related business located within the APR that is in any way competitive with or similar to the NOVUS® Business."  (Id. ¶ 22.3.)  The "NOVUS® Business" is defined as "the distinctive automotive glass repair, replacement and automotive paint restoration business products and services associated with the trademarks, trade names, services marks, copyrights, slogans, signs, logos and commercial symbols licensed to Novus. . . ."  (Id. ¶ 1.1.)   The "APR"is the Area of Primary Responsibility, i.e., the territory of the franchise, which is this case consists of a four-county area in Texas.  (Id. ¶ 2.1.)

The Deans operated their Novus franchise in Victoria, Texas, and chose not to renew their franchise after the ten-year franchise period expired in February 2010. They became dissatisfied with the franchise arrangement and contend that Novus failed to provide the support, information and assistance as promised in the Franchise Agreement. (Defs.' Mem. in Opp'n Mot. Prelim. Inj. at 2.) In April 2010, counsel for Novus wrote a letter to the Deans, advising them that they were in breach of the Franchise Agreement for continuing to operate a glass repair or replacement business in the APR, using Novus's names and marks, although Novus was willing to extend the termination of the agreement until May 8, 2010, at which time Defendants would be expected to comply with the Franchise Agreement's post-term obligations. (Letter of 4/15/10 from C. Modell to M. Dean & J. Dean, Ex. B to Complaint.) Defendants did not reply to Novus's letter. (Beveridge Decl. ¶ 11.)

Novus contends that after the May 8, 2010 franchise termination, it learned that Defendants continued to operate a glass repair and replacement business known as "5 Star Auto Glass & Truck Accessories," in the same location as their former business, and therefore, within the APR of their former Novus franchise. (Id. ¶¶ 12-14.) Novus retained private investigators who visited 5 Star Auto Glass & Truck Accessories on May 28, 2010 and found the following evidence of the Novus name in use in Defendants' business: the Novus name imprinted on a customer receipt, a Novus poster-sized wall hanging, and Novus wall plaques and service manuals bearing the Novus name. (See Decl. of Irene Henrichs ¶ 9; Decl. of Patty Finley ¶¶ 6-7.) Plaintiff's internet and telephone directory searches revealed that the number for Defendants' business had remained unchanged from its number as a Novus franchise. (Beveridge Decl. ¶ 14.)

On July 1, 2010, Plaintiff filed suit against Defendants, seeking damages for trademark

infringement, breach of the Franchise Agreement and violations of the Minnesota Deceptive

Trade Practices Act, the Minnesota Unlawful Trade Practices Act, unjust enrichment, unfair

competition and breach of personal guaranties.  (See Complaint, Doc. No. 1.)  On July 8, 2010,

Plaintiff filed the instant motion for a preliminary injunction, seeking to enforce the post-

expiration provisions of the Franchise Agreement.  Plaintiff argues that the four factors that this

Court is required to consider in a request for a preliminary injunction – factors set forth in

Dataphase Sys. Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981), and therefore referred to

as the "Dataphase factors" –  strongly support the issuance of a preliminary injunction.  (Pl.'s

Mem. Supp. Mot. Prelim. Inj. at 8.)   In particular, Novus argues that Defendants' continued

business operation is harming its goodwill, impairing its ability to re-franchise the area and

harming the integrity of Novus's franchise system.  (Id. at 20.)

The hearing on Plaintiff's motion was scheduled to be heard on September 1, 2010 and

Defendants filed their response to Plaintiff's motion on August 27, 2010 (See Defs.' Resp.

Mem., Doc. No. 19.)  On August 31, 2010, Plaintiff filed a reply brief as well as a motion to

strike Defendants' responsive memorandum as untimely under the Local Rules.  (See Pl.'s Reply

Mem., Doc. No. 25; Pl.'s Mot. Strike, Doc. No. 20.)

In response to the motion for a preliminary injunction, Defendants argue that they no

longer employ the Novus name on any of their buildings, signs, or advertisements, nor do they

use Novus materials and that they have since changed their business's telephone number.

(Defs.' Opp'n Mem. at 1, 3.)  While Defendants concede that the parties entered into the

Franchise Agreement, they contend that Plaintiff failed to provide the support, information and

assistance as promised in the agreement.  Moreover, at oral argument, Defendants argued that

Novus eventually required them to make double royalty payments and enter into two franchise

agreements – one of which applied to a fictitious business – in order to ensure that Novus would not open other franchises in the Defendants' four-county territory.   Defendants argue that there will be no harm to Plaintiff in allowing Defendants to continue to operate their business, particularly as Novus has no other franchises within the APR, and few, if any, in the entire state of Texas.  In contrast, Defendants contend that granting a preliminary injunction may destroy their business, by rendering them unable to provide glass repair and replacement services in their present location.  (Id. at 3.)

This Court's Report & Recommendation has been delayed since the September motion hearing,[1] in part, because after the hearing, the Court became aware of an earlier decision issued by the Honorable John Tunheim, the District Court Judge to whom this case is likewise assigned, in which Novus Franchising sought a preliminary injunction against two former franchisees, involving facts similar to this case.  See Novus Franchising, Inc. v. Oksendahl, 07-CV-1964 (JRT/FLN) and 07-CV-1965 (JRT/FLN), 2007 WL 2084143 (D. Minn. July 17, 2007).[2]  In Oksendahl, Judge Tunheim granted Novus's motion for a preliminary injunction in part, as it related to the use of Novus's marks and products in connection with the defendants' glass repair businesses, but did not enjoin the defendants from providing other glass repair services or products that had no connection with Novus's marks or products.  Because neither party in this case had addressed the Oksendahl decision, in a November 9, 2010 Order, the Court invited the parties to submit supplemental memoranda regarding the applicability of the Oksendahl ruling to

---

[1]  The parties also sought a delay in the ruling in order to attempt to settle this matter, which was unsuccessful.

[2]  The Court's ruling applied to two actions brought by Novus, one against the Oksendahl defendants, the other against the Hemperly defendants.  Novus had brought motions for injunctive relief in both actions.  In this Report & Recommendation, the Court refers to this ruling simply as Novus Franchising v. Oksendahl, or Oksendahl.

the instant matter.  (See Order of 11/9/10, Doc. No. 36.)  Both parties submitted supplemental memoranda, which this Court discusses herein.

## II.    DISCUSSION

### A.    Motions to Strike

Plaintiff moves to strike Defendants' responsive memorandum and Defendants' supplemental memorandum.  As to the initial responsive memorandum, Novus cites to Local Rule 7.1(b)(2), which provides that a party responding to a dispositive motion (which includes motions for injunctive relief), shall file and serve their responsive documents at least 21 days prior to the hearing.  Defendants filed their responsive memorandum two business days prior to the hearing, and Plaintiff filed both a reply memorandum and the instant motion to strike one day before the hearing.

While it is true that "a *pro se* litigant is bound by the litigation rules as is a lawyer," Lindstedt v. City of Granby, 238 F.3d 933, 937 (8th Cir. 2000), in certain contexts, courts may appropriately consider a litigant's *pro se* status and apply a more liberal standard.  See Chester v. St. Louis Housing Authority, 873 F.2d 207, 209 (8th Cir. 1989) ("We think that *pro se* status is particularly relevant in cases like the present one in which the defendant prevails on grounds, such as res judicata, that involve procedural rules that are difficult even for experienced lawyers and judges to apply, much less lay persons."); Smith v. St. Bernards Regional Med. Ctr., 19 F.3d 1254, 1255 (8th Cir. 1994) (*pro se* pleadings are more liberally construed than those drafted by an attorney.)

As a practical matter, the Deans' legal memorandum that Novus seeks to strike was barely four pages long and was submitted five days before the hearing.  The Local Rules timing requirements are designed to provide parties with adequate notice and an opportunity to be

heard.  While the Deans' initial responsive brief was not submitted in compliance with the Local Rules, both the Court and opposing counsel had the opportunity to review it and were therefore apprised of Defendants' position in advance of the hearing.  Novus's statements to the contrary, it was not prejudiced by Defendants' filing and it had the opportunity to file a reply memorandum, which it did.  Defendants' procedural failing does not warrant the sanction of striking their responsive memorandum.

Novus also moves to strike Defendants' supplemental memorandum, arguing that it should be stricken because portions of it were copied from their initial responsive memorandum, discussed above, which Novus also moved to strike.  Novus thus contends that pages 1 and 2 of the Deans' five-page supplemental brief are repetitive and address matters outside the scope of the Court's request for memoranda regarding the applicability of the <u>Oksendahl</u> ruling.  For the reasons discussed above, the Court does not find that the requested sanction is warranted, particularly as Defendants did address the applicability of the <u>Oksendahl</u> decision in their supplemental brief.  The Court therefore recommends the denial of Plaintiff's motions to strike and addresses the merits of Plaintiff's motion for injunctive relief.

### B. Preliminary Injunction

Plaintiff seeks a preliminary injunction that: (1) enforces the post-term covenant not to compete for a two-year period, prohibiting Defendants from engaging in a business within the Texas counties of Calhoun, Dewitt, Jackson and Victoria that is in any way competitive with Novus; (2) restrains Defendants from using any registered Novus marks and retaining any confidential or proprietary information provided to them under the Franchise Agreement; (3) requires that, within five days of the Court's order, Defendants return all confidential and proprietary Novus materials, remove and return any materials bearing the Novus mark, and

reroute or change the business telephone number. Novus further asks that Defendants provide proof to Plaintiff's counsel that all such steps be taken within seven days of the Court's order. (See Pls.' Mem. Supp. Mot. Prelim. Inj. at 34.)

This Court may grant injunctive relief only upon a proper showing of (1) the probability of success on the merits, (2) that the movant will suffer irreparable harm absent the injunction, (3) the balance between this harm and the harm an injunction would cause other parties, and (4) where the public interest lies. Dataphase Systems, Inc., 640 F.2d at 113-14. The movant bears the burden of proof for each factor. Gelco v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987).

### 1.     Likelihood of Success on the Merits

Novus argues that it is likely to succeed on the merits of its claims, in particular its breach of contract and trademark infringement claims. Defendants respond, in essence, that Novus's breach of contract claim is unlikely to succeed because the non-compete provision is unreasonable and the trademark infringements claim is unlikely to succeed because Defendants are no longer using the Novus name, marks or materials.[3]

As a predicate to analyzing the movant's likelihood of success on the merits, however, the Court must determine the applicable law. The Franchise Agreement provides that it will be

---

[3] While Novus argues that the Deans fail to literally argue that the non-compete is "unreasonable," and for that reason, the non-compete should be considered enforceable, the Deans' arguments with respect to the balance of harms in particular, along with their general arguments, are applicable to the question of reasonableness. For example, the Deans argue that the four-county territory covered by the Franchise Agreement includes only one community of any size – Victoria, Texas – where their business is located, making it difficult to relocate beyond the four counties in question. (Defs.' Opp'n Mem. at 3.) Defendants also contend that Novus has a limited presence, if any, in the entire state of Texas, such that the goodwill of the Novus name is not affected by Defendants' continued business operations. (Defs.' Supp'l Opp'n Mem. at 5.) These arguments bear on the analysis of the reasonableness of the covenant not to compete and are accordingly considered by the Court.

governed by the laws of the state in which the APR, or franchise territory, is located.  (Franchise

Agreement ¶ 27.1, Ex. B to Beveridge Decl.)    "Minnesota traditionally enforces parties'

contractual choice-of-law provisions."  Hagstrom v. American Circuit Breaker Corp., 518

N.W.2d 46, 48 (Minn. Ct. App. 1994).   The Court finds that because the APR is located in the

state of Texas, the Franchise Agreement is governed by Texas law.  See Bonus of Am. Inc. v.

Angel Falls Services, L.L.C., 10-CV-2111 (DSD/FLN), 2010 WL 2218574, *3 (D. Minn. May

28, 2010) (applying Texas law, as provided in the franchise agreement, in its analysis of the

movant's likelihood of success on the merits).

      Courts applying this area of law first look to whether the covenant not to compete is

ancillary to an otherwise enforceable agreement, i.e., the franchise agreement, then courts

evaluate whether the restrictive aspects of the covenant are reasonable.  See id.; Meineke

Discount Muffler v. Jaynes, 999 F.2d 120, 123 (5th Cir. 1993).

> Under Texas law, covenants not to compete are enforceable if they are:
>
> ancillary to or part of an otherwise enforceable agreement at the time the
> agreement is made to the extent that it contains limitations as to time,
> geographical area, and scope of activity to be restrained that are reasonable and
> do not impose a greater restraint than is necessary to protect the goodwill or other
> business interest of the promisee.

Tex. Bus. & Com.Code Ann. § 15.50. A contract is "otherwise enforceable" when promises

outside of the covenant constitute an enforceable agreement. See Ray Mart Inc. v. Stock Bldg.

Supply of Tex. LP, 302 F. App'x 232, 236-37 (5th Cir.2008) (applying Texas law). A covenant is

ancillary if (1) the consideration given in the otherwise-enforceable agreement creates the

franchisor's interest in restraining the actions of its franchisees, and (2) the covenant is designed

to enforce the franchisee's promises. See id. at 237.

      The Court finds that the Franchise Agreement here is "otherwise enforceable" because

the promises outside of the covenant constitute an enforceable agreement. In the Franchise Agreement, Novus promised to provide glass replacement and franchisee business training and to allow the use of certain proprietary information in exchange for the Deans' promises to make payments and to keep Novus' proprietary information confidential. This consideration gives rise to an agreement that is "otherwise enforceable." See Bonus of Am., 2010 WL 2218574 at *3. Neither party appears to dispute the general validity of the Franchise Agreement.

The Court therefore turns to the enforceability of the non-compete provision. It is troubling that Plaintiff failed to acknowledge and attempt to distinguish this Court's ruling in Oksendahl in its initial moving papers. The Oksendahl decision was issued by Judge Tunheim and involves the same motion, the same plaintiff, the same contractual language, one of the same causes of action and similar facts. It is particularly relevant as it pertains to the likelihood of success on the merits of Plaintiff's breach of contract claim, as that claim was at issue in Oksendahl as well. In Oksendahl, the defendants were former Novus franchisees who operated glass repair and replacement businesses in Idaho. 2007 WL 2084143 at *1. The Oksendahl defendants had been involved in the auto repair business for many years and subsequently entered into franchise agreements with Novus. 2007 WL 2084143 at *1. The agreements contained the same two-year non-compete provision at issue in the instant case. The franchisees grew dissatisfied with Novus's business support and products and eventually allowed the franchise agreements to expire, but continued to operate their glass repair businesses. Novus filed suit, alleging breach of the non-compete provision and sought preliminary injunctions to enjoin the defendants from providing any services in violation of the non-compete provisions. Id.

In reaching its decision on Novus's motions for injunctive relief in Oksendahl, this Court

analyzed the four <u>Dataphase</u> factors, beginning with the likelihood of success on the merits. Under Idaho law, the Court noted that for a non-compete clause to be reasonable, it must be no more restrictive than necessary to protect a legitimate business interest.  <u>Id.</u>  (citing <u>Intermountain Eye and Laser Ctrs., P.L.L.C. v. Miller</u>, 127 P.3d 121, 127 (Idaho 2005)).    While Texas law applies to the analysis of the likelihood of success on the merits in the instant case, the legal analysis of whether a non-compete provision is 'no more restrictive than necessary to protect a legitimate interest' is similar, as Plaintiff concedes.  (Pl.'s Supp'l Mem. Supp. Mot. Prelim. Inj. at 1.)   In <u>Oksendahl</u>, this Court found that Novus had articulated a legitimate business interest served by the non-compete provision, namely, its interest in protecting itself from unfair competition, ensuring the financial well being of its franchise network, and protecting the goodwill associated with the Novus mark and Novus products.  2007 WL 2084143 at *3.  However, the Court questioned whether the scope of the covenant was "no more restrictive than necessary" to protect Novus's legitimate business interest in the goodwill of the Novus name.   "The non-compete provision may well be reasonable to the extent it applies only to a franchisee's use of Novus marks and products.  However, the construction of the non-compete provision urged by Novus prohibits more than defendants' mere use of Novus marks and products."  <u>Id.</u> at *4.  Therefore, this Court concluded that it was unclear whether the covenant was no more restrictive than necessary and that Novus had not conclusively shown that it was likely to succeed on its breach of contract claim.  <u>Id.</u>

In their supplemental memorandum, Novus attempts to distinguish the facts of <u>Oksendahl</u> from the facts of the instant case, arguing that the distinctions warrant a different outcome.  It is true that in <u>Oksendahl</u>, the franchisees had been in the glass repair business for many years prior to entering into the Novus franchise agreement.  2007 WL 2084143 at *1.  In contrast here,

Novus contends that it provided the Deans with the necessary training to perform glass repair and replacement services that they otherwise lacked before they entered into the Franchise Agreement. (Pl.'s Supp'l Mem. at 2.) Novus also argues that the Oksendahl defendants did not hold themselves out as a "Novus" named business, but operated under a different business name so that they did not profit from the goodwill associated with the Novus name, which is why, Novus argues, that this Court limited the preliminary injunction to the use of the Novus name or products. (Id.) Here, however, the Deans contend that they no longer hold themselves out as a Novus franchise and do not use Novus's marks or materials.

Plaintiff also cites to three post-Oksendahl decisions of this Court in which Novus was granted preliminary injunctions enforcing two-year non-compete provisions in its franchise agreements with other franchisees. See Novus Franchising, Inc. v. Brantner, 09-CV-3087 ADM/JJK, Order of 12/23/09, Doc. No. 14, Ex. G to Klaus Aff. in Supp. Pl's Supp'l Mem.; Novus Franchising, Inc. v. Flint, 09-CV-85 RHK/SRN, Order of 3/11/09, Doc. No. 18, Ex. C to Klaus Aff. in Supp. Pl.'s Supp'l Mem.; Novus Franchising, Inc. v. Garcia & Assocs., LLC, et al., 08-CV-5750 DSD/JSM, Order of 2/13/09, Doc. No. 25, Ex. E to Klaus Aff. in Supp. Pl.'s Supp'l Mem. Notably, in each of these cases, the defendants failed to appear and failed to enter a response. Therefore, regardless of the merits of Novus's position in those matters, it is not surprising that Novus's motions were granted, as they were uncontested. Because the motions were unopposed and the defendants made no appearances, the ensuing orders were therefore brief, with no analyses of the Dataphase Factors as applied to the facts of those respective cases, although the factors were deemed to have been satisfied. Under these circumstances, the Court does not find these three decisions add to the analysis here, and certainly they do not constitute binding authority. In contrast, the Oksendahl decision was issued by Judge Tunheim and

contains a thorough analysis of the <u>Dataphase</u> factors as applied to the facts. While the facts may differ to some degree, the analysis in the <u>Oksendahl</u> opinion does not turn upon the differences emphasized by Novus here.[4]

Regarding the goodwill associated with the Novus name in this case, as in <u>Oksendahl</u>, the Court finds that Novus has a legitimate interest in protecting the goodwill associated with the Novus name, mark and materials, however, the Court is not persuaded that the non-compete provision here – the same provision as in <u>Oksendahl</u> – is no more restrictive than necessary to protect Novus's legitimate business interest in the goodwill associated with the Novus name. As in <u>Oksendahl</u>, Novus urges a construction of the non-compete that goes far beyond restraining Defendants from the use of the Novus name and marks, but restricts them from engaging in any related business that is in any way competitive with the Novus business. The Deans maintain that they are no longer operating as a Novus franchise, but as 5 Star Auto Glass & Truck Accessories. They contend that they have removed all Novus signs, have ceased using any Novus marks in any way and have changed their business telephone number. (<u>See</u> Defs.' Opp'n Mem. at 1; Defs.' Supp'l Mem. at 1-2; 4.) To the extent that Novus's goodwill is engendered by the use of the Novus name and marks, Defendants contend that they are no longer using any Novus names or marks. Given the holding of <u>Oksendahl</u> and the similarities between the cases, the undersigned magistrate judge is bound to reach the same conclusion, namely, that it is unclear whether the non-compete provision is no more restrictive than necessary to protect

_____

[4] Plaintiff also cites to two Minnesota state court decisions involving its successful efforts to enforce non-competition agreements against its former franchisees, <u>see</u> <u>Novus Franchising, Inc. v. Gross</u>, Bus. Franchise Guide (CCH) ¶ 10,842 (Hennepin Co. Dist. Ct. 1994); <u>Novus Franchising, Inc. v. Droste</u>, Order Denying Dismissal and Order Granting Temporary Inj. and Mem., Hennepin Ct. Dist. Ct., Case No. 27 CV 06-23289 (April 9, 2007). These decisions are of little persuasive value and no binding authority to this Court, as they do not involve the application of Eighth Circuit precedent.

Novus's interest in the goodwill associated with its name, marks and materials.  The Court therefore finds that Novus has not conclusively shown that its likely to succeed on the merits of its breach of contract claim.

Novus has also alleged a claim for violation of other post-term obligations of the Franchise Agreement, including, payment of fees due and owing under the Franchise Agreement, returning all Novus manuals and equipment, informing suppliers in writing of the termination of the Novus franchise, changing the appearance of business vehicles so that they are distinguishable from standard Novus vehicles, canceling any assumed name or similar registrations filed by the franchisee and complying with all other applicable provisions of the agreement.  (See Complaint ¶¶ 51-56.)  Because of the various factual underpinnings of this claim, it is difficult to say, based on the information currently before the Court, whether Plaintiff is likely to prevail on the merits.   In its memorandum, Novus focuses solely on the elements of this cause of action that pertain to the use of the Novus name and marks, the need to change the business name and telephone numbers, return Novus proprietary materials and to refrain from implying that the Deans operate a Novus franchise.  (Pl.'s Mem. Supp. Mot. Prelim. Inj. at 17.)  It appears that the Deans have performed some of the post-term obligations, as discussed herein, therefore, Novus may be unlikely to prevail on the merits of this cause of action, as it relates to these particular elements.  The Court certainly cannot say, however, whether Plaintiff is likely to prevail on the portions of the cause of action that Plaintiff did not address, including the payment of any fees or the requirement that any business vehicles' appearance be distinguishable from Novus's business vehicles, as it has no information upon which to determine the likelihood of success.

Regarding the likelihood of success of Plaintiff's Lanham Act and common law

trademark infringement claims, to prevail on a trademark infringement claim, Novus must first establish ownership in a legally protectible mark, see Petro Franchise Sys., LLC v. All am. Props., Inc., 607 F. Supp.2d 781, 788 (W.D. Tex. 2009) (citations omitted); 15 U.S.C. § 1114. Novus contends that it can establish its ownership interest in its mark, as it is registered with the United States Patent and Trademark Office.  (Beveridge Decl. ¶ 4.)  Once ownership of a trademark is established, the plaintiff must demonstrate that the unauthorized use of the mark is likely to cause confusion.  Petro, 607 F. Supp.2d at 788.  Novus cites to authority for the proposition that the likelihood of consumer confusion is very strong when a terminated franchisee continues to use the former franchisor's trademarks without authorization.  (Pl.'s Mem. Supp. Mot. Prelim. Inj. at 14) (citing Opticians Ass'n of Am. v. Independent Opticians of Am., 920 F.2d 187, 195 (3d Cir. 1990) ("likelihood of confusion is inevitable, when . . . the identical mark is used concurrently by unrelated entities); Downtowner/Passport Int'l Hotel v. Norlew, Inc., 841 F.2d 214, 219 (8th Cir. 1988); Merry Maids Ltd. P'ship. v. Kamara, 33 F. Supp.2d 443, 445 (D. Md. 1998)).

The Deans represent that they have removed all Novus marks from their business, changed their telephone listing and do not hold themselves out as a Novus franchise.  This is distinguishable from situations in which a former franchisee continues to hold itself out as a franchise, even in the face of a motion for a preliminary injunction, see, e.g., TGI Friday's Inc. v. Great NW Restaurants Inc., 652 F. Supp.2d 763 (N.D. Tex. 2009), or where the former franchisee not only continues to use the mark when facing a preliminary injunction motion, but also counterclaims for a preliminary injunction to enforce the franchise agreement, see Petro, 607 F. Supp.2d 781 (W.D. Tex. 2009).   Here, no one disputes that the Franchise Agreement is terminated.  In addition, because Defendants contend that they have discontinued to use the

Novus mark and name, it appears that Plaintiff would not have significant likelihood of success on its claim of trademark infringement. In another case, this Court reached such a conclusion, albeit applying Eighth Circuit authority, as opposed to the Fifth Circuit authority applicable here, finding no likelihood of success on a trademark infringement claim where the alleged infringer had removed all marks from his business. See Team Tires Plus, Ltd. v. Heartlein, 01-CV-1197 (PAM/JGL), 2001 WL 1640068, *2 (D. Minn. Nov. 20, 2001). The Court did, however, deny the motion for preliminary injunction without prejudice, pending the plaintiff's independent verification of the removal of marks. Id. If Novus therefore determines that its marks have not been removed, they may consider renewing their request for a preliminary injunction.

Turning to the likelihood of success on Plaintiff's claims alleging the violation of Minnesota's Uniform Deceptive Trade Practices Act ("Minnesota's Uniform DTPA") and Minnesota's Unlawful Trade Practices Act (" Minnesota's UTPA"), Novus itself did not address these claims, therefore the Court will address them briefly. Minnesota's UTPA prohibits trade practices that, *inter alia*, "mislead consumers as to the quality, ingredients and origin of merchandise purchased." Minn. Stat. § 325.09. While there is little case law interpreting this statute, the Eighth Circuit has required a plaintiff alleging such a claim to demonstrate a causal link between the actions of the defendant and injury to consumers. Tuttle v. Lorillard Tobacco Co., 377 F.3d 917 (8th Cir. 2004) (Widow of baseball player who died of oral cancer failed to establish that the conduct of smokeless tobacco manufacturers in failing to warn caused consumers to continue using smokeless tobacco and to sustain physical injury in reliance on the manufacturers' conduct, defeating her UTPA claim.) Novus has presented no such evidence in support of this motion, therefore, the Court cannot determine the likelihood of success of the UTPA claim.

In general terms, Minnesota's DTPA prohibits businesses from passing off goods or services as those of another and causing the likelihood of confusion as to the source or sponsorship of the goods or services at issue.  See Minn. Stat. § 325D.44.  The analysis for claims under the Minnesota Uniform DTPA is the same as that applied under the Lanham Act.  Buetow v. A.L.S. Enterprises, Inc., 07-CV-3970 (RHK/JJK), 2010 WL 1957489 (D. Minn. May 13, 2010).  Because Defendants contend that they have removed all Novus marks and materials, consistent with its findings with respect to Plaintiff's trademark infringement claims, the Court concludes that Plaintiff does not have significant likelihood of success on this claim.

Plaintiff has also alleged an unjust enrichment cause of action.  While at least one court has recognized disagreement by Texas courts as to whether unjust enrichment exists as an independent cause of action in Texas, it nonetheless held that regardless of whether it is an independent claim, unjust enrichment is a permissible theory of recovery.  Newington Ltd. v. Forrester, 3:08-CV-0864-G, 2008 WL 4908200, *3-4 (N.D. Tex. Nov. 13, 2008) (citations omitted).  In any event, Novus did not address its unjust enrichment claim in the instant motion, and given that it may or may not exist as an independent cause of action, the Court reaches no conclusions as to the likelihood of Plaintiff's success on the merits of this claim.

Finally, Plaintiff's Complaint includes causes of action for unfair competition and breach of personal guaranties.  Plaintiff does not address these causes of action in its argument, therefore, the Court will not address them, as the likelihood of success of Plaintiff's primary causes of action have been discussed above.

### 2.    Irreparable Harm

As to the next Dataphase factor, Novus must establish that irreparable harm will result absent injunctive relief and that such harm will not be compensable by money damages.

Oksendahl, 2007 WL 2084143, *4 (citing Northland Ins. v. Blaylock, 115 F. Supp. 2d 1108, 1116 (D. Minn. 2000)).  Injunctive relief is not appropriate when the harm is merely speculative or based on a mere assumption of possible results.  Cargill, Inc. v. Hartford Accident & Indem. Co., 531 F.Supp. 710, 715 (D. Minn. 1982).

Novus argues that breaches to covenants not to compete by franchisees cause irreparable harm to the franchisor by (1) causing loss of customers or customer goodwill; (2) impairing the franchisor's ability to re-franchise the territory; and (3) harming the integrity of the franchise system.  (Pl.'s Mem. Supp. Mot. Prelim. Inj. at 20) (citations omitted).

Faced with similar irreparable harm arguments in Oksendahl, this Court ruled that Novus's claimed impairment in re-franchising the territory at issue was speculative, and the Court's analysis again turned on the reasonableness of the non-compete provision.  Oksendahl, 2007 WL 208413 at *4.  To the extent that customers sought out the Oksendahl defendants' services based on the Novus name, the defendants' continued use of the Novus name, marks and materials in violation of the franchise agreement might make it difficult for Novus to secure a new franchise in that market.  Therefore, the Court found that this factor, subject to the continued use of the Novus name and products, weighed slightly in favor of Novus.  Id.  Here, the Deans contend that they no longer use the Novus name or marks.  Moreover, there is no Novus franchise anywhere near the territory in question.  Novus argues that a prospective Novus franchisee in the Deans' territory would be in the untenable position of competing against a business that was established by Novus.   As Judge Tunheim found in Oksendahl, this Court, however, finds that Novus's claimed impairment to its ability to re-franchise the territory is speculative, unless Defendants were using the Novus name and marks. Novus has a very limited presence in the state of Texas and the Deans operated the only Novus franchise within the four-

county area in question.

As to the claimed impairment to Novus's goodwill, this Court observed in Oksendahl, "[I]t is less clear how Novus suffers irreparable harm when defendants provide glass repair services and products that have nothing to do with the Novus name.  In that case, Novus's alleged difficulties in re-franchising the area would have no apparent connection to the goodwill associated with Novus products and services." Id. at *5.  This Court concluded that while Novus might seek monetary relief for any resulting loss of customers under the non-compete provision, "injunctive relief stemming from a loss of goodwill would not be appropriate."  Id.  The Court reaches the same conclusion here, as Defendants contend that they no longer employ the use of the Novus name or marks in the operation of their business.

Novus argues that the integrity of its franchise system will be irreparably harmed absent injunctive relief.  While Novus's interest in preserving the integrity of its franchise system is certainly a legitimate concern, the Court finds that the claimed harm is speculative.  As this Court observed when addressing the same argument in Anytime Fitness, Inc. v. Family Fitness of Royal, LLC, 09-CV-3503 (DSD/JSM), 2010 WL 145259, *3 (D. Minn. Jan. 8, 2010), success on the merits in the instant case would most effectively dissuade other franchisees from ignoring their agreements.   The Court concludes that unless Defendants are using the Novus name, marks and materials in their business, which they contend they are not using, Novus has not sufficiently demonstrated that it will suffer irreparable harm, absent injunctive relief.

In addition, Novus argues that it will suffer irreparable harm due to Defendants' trademark infringement and other violations of the post-termination obligations.   This Court has found, however, low probability of success on those claims in light of Defendants' non-use of the Novus name and marks. For the reasons discussed above, the Court finds an insufficient

showing of irreparable harm.

### 3. Balance Between This Harm and Harm an Injunction Would Cause Other Parties

The third <u>Dataphase</u> factor requires the Court to balance the harm alleged by Plaintiff against the harm an injunction would cause other parties. <u>Oksendahl</u>, 2007 WL 2084143 (citing <u>Pottgen v. Missouri State High Sch. Activities Ass'n</u>, 40 F.3d 926, 928 (8th Cir. 1994)).

Novus argues that Defendants can still operate their business by moving it outside the APR or converting the operation of services at their currently-located business to anything other than glass repair and replacement. In addition, Novus argues that any harm the Deans would suffer is entirely self-inflicted.

In response, the Deans, on the other hand, argue that Plaintiff's suggestion of relocating the business outside the four-county territory belies the fact that the territory consists of rural Texas, with the exception of the city of Victoria, in which the business is located. "To operate in another area outside of [Victoria], you might as well tell the Defendant to close down his business and reopen in San Antonio, Texas, Houston, Texas, or Austin, Texas, all of which would be next to impossible." (Defs.' Opp'n Mem. at 3.) Defendants argue that granting the requested preliminary injunction may effectively put them out of business.

In <u>Oksendahl</u>, this Court balanced the same set of harms:

> The Court finds that the harm to defendants from an injunction that enjoins all glass repair activity would likely exceed the harm to Novus in the absence of injunctive relief. In particular, Novus has not shown conclusively that defendants' continued operation of their glass repair businesses creates an insurmountable barrier to new Novus franchisees in the Areas of Primary Responsibility. On the other hand, the injury to defendants from a more limited injunction, enjoining defendants from using Novus marks and products in their glass repair businesses, is outweighed by the harm to Novus absent injunctive relief.

<u>Oksendahl</u>, 2007 WL 2084143 at *5.

As in Oksendahl, the Court finds that the harm to defendants from an injunction enjoining all glass repair and replacement activity would likely exceed the harm to Novus in the absence of injunctive relief.  Here too, Novus has not conclusively shown that the continued operation of Defendants' glass repair and replacement business creates an insurmountable barrier to new franchisees in the area.  On the other hand, the injury to defendants from a more limited injunction, enjoining them from using the Novus name, marks and materials in their glass repair and replacement business is outweighed by the harm to Novus absent injunctive relief.  Accordingly, the Court finds that the balance of harms weighs slightly in favor of granting a limited preliminary injunction, enjoining the Deans from the use of the Novus name, marks and materials.

### 4.      Public Interest

The final Dataphase factor, the public interest, again requires reference to the reasonableness of the covenant not to compete.  As this Court acknowledged in Oksendahl, the public interest is served by upholding valid restrictive covenants.  Id. at *5.  While the Court does not reach any conclusions as to the validity of the covenant not to compete, "to the extent the non-compete provision presents a reasonable restriction on defendants' use of Novus marks and products, the Court finds that an injunction of such activity is in the public interest."  Id.

In sum, based on the review of the Dataphase factors, the Court concludes that they weigh slightly in favor of granting a limited preliminary injunction.  The Court therefore recommends, consistent with the Oksendahl decision, that Novus's motion for injunctive relief be granted with respect to the use of the Novus name, marks and materials used by Defendants in connection with their glass repair and replacement business.  The Court does not recommend that Defendants be enjoined from providing any other glass repair and replacement services

unrelated to the Novus name, marks or materials.  The Court therefore recommends the denial of Plaintiff's motion for a preliminary injunction in all other respects.


## III.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1.    Plaintiffs' Motion for Preliminary Injunction (Doc. No. 4) be **GRANTED in part**, and **DENIED in part**, consistent with this Report & Recommendation; and

2.    Plaintiff's Motion to Strike (Doc. No. 20) be **DENIED**; and

3.    Plaintiff's Motion to Strike Supplemental Response (Doc. No. 41) be **DENIED.**

Dated: November 29, 2010

s/Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **December 14, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.